No. 41,661

DALE ELTON NICHOLS, JR., *Appellant,* v. MARILYN ALICE NICHOLS, *Appellee.*

(349 P. 2d 929)

Opinion filed March 5, 1960.

*Frederick G. Apt, Jr.,* of Iola, argued the cause, and *Howard M. Immel* and *Charles H. Apt,* both of Iola, were with him on the brief for the appellant.

*Orville J. Cole,* of Garnett, argued the cause, and *Roy L. Cole,* of Garnett, was with him on the brief for the appellee.

The opinion of the court was delivered by

PRICE, J.: This is a divorce action and the only question on appeal concerns the alleged excessiveness of the award of alimony.

Summarized very briefly, the background of the matter is this:

At the time of their marriage, on June 10, 1949, at Iola, Dale Nichols, Jr., and Marilyn Sherman had known each other for approximately eight months. They were 21 and 19 years of age, respectively, and it was the first marriage for both. Shortly after their marriage the parties moved to Pittsburg, Kansas, where he attended college. She worked at a part-time job. In October, 1950, he entered the army, and a month later she became paralyzed from her waist down as a result of a tumor on her spine. In January, 1951, he received a "hardship discharge" from the service in order to return home and take care of her. The parties then went to Louisiana and lived with her parents until 1954, during which period he continued his college education. They then moved to Manhattan, where he continued his education at Kansas State College. While in Manhattan they lived at a motel, where both of them worked in return for rent and a small salary. Apparently they had no marital troubles until November, 1956, at which time he returned from a student inspection trip and advised her that he was in love with a woman he had met in Kansas City. Shortly thereafter he entered the Veterans Administration Hospital in Topeka and remained there for about two weeks, apparently suffering from a nervous disorder. Upon returning to Manhattan he moved into

an apartment by himself and she remained at the motel where she continued to work at odd jobs.

In January, 1957, he was graduated with an engineering degree from Kansas State College, and shortly thereafter obtained employment with Western Electric Company as an industrial engineer. This position took him to Chicago, and she remained in Manhattan. Shortly thereafter her parents came from Baton Rouge, Louisiana, and took her home with them.

On June 3, 1958, he filed suit for divorce, charging her with gross neglect of duty. She filed a general denial, and a cross-petition seeking a divorce on the grounds of extreme cruelty, gross neglect of duty and abandonment for more than one year.

At the conclusion of the hearing thereon the court denied his petition, granted a divorce to her on the ground of gross neglect of duty, and entered a judgment for alimony in the amount of $16,000 to be paid at the rate of $170 per month for the first eight months following the decree, and thereafter at the rate of $110 per month until such sum is fully paid.

Plaintiff's post-trial motions being overruled, he has appealed, and, as before stated, the only complaint is that the award of alimony was excessive.

We will touch very briefly on the condition and status of the parties at the time of trial:

Plaintiff's salary as an industrial engineer was $605 per month plus traveling expenses. There was evidence that he was indebted to his father and to a bank in Iola. Although from time to time he had been subject to "nervous disorders," apparently it was nothing of a serious nature. There were no children of the marriage, and the parties owned no property.

Defendant is paralyzed from the waist down and will be for the rest of her life. She has difficulty with her bladder control. She is confined to a wheel chair. She has a high-school education and works at a hospital in Baton Rouge and also for a doctor in that city. On the side she is taking an industrial drafting course in an effort further to support herself. After deductions her earnings are approximately $104 per month. She has no other property. During the remainder of her life she will require periodic examinations and medical treatment.

Under all of the facts and circumstances, may it be said that the award of alimony in the amount of $16,000, payable in installments as mentioned, was excessive?

298

The parties cite a number of our decisions bearing on the question of alimony awards, among them being *Carlat v. Carlat,* 168 Kan. 600, 215 P. 2d 200, which contains a good discussion of the applicable rules. We quote briefly from that case:

"The sole question appellant now presents for review, as we have heretofore indicated, is that under the facts and circumstances heretofore related the alimony award is excessive and therefore subject to revision on appeal. He concedes, as well he may, a trial court has wide discretion in the allowance of alimony in a divorce proceeding and that on appeal its action with respect thereto will not be set aside or disturbed unless there is a clear showing that discretion has been abused. (Citing cases.) . . .

"There is no hard and fast rule in this jurisdiction for determining the amount of an alimony award where a wife is granted a divorce for the fault of her husband. Generally speaking it can be said to depend upon the facts disclosed by the evidence in the particular case involved. However, it is true we have repeatedly held that in fixing its amount a trial court is required to take into consideration the conduct of the parties, the needs of the wife, the earning capacity of the husband, the amount of property owned by the parties and, under certain conditions not here involved, how and when that property was acquired. (Citing cases.) It may also take into account future earnings of the husband. (Citing cases.)" (p. 602.)

Further discussion would add nothing to this opinion. The facts and circumstances of the case speak for themselves. The trial court did not abuse its sound judicial discretion in making the award that it did and the judgment is affirmed.